UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| VS | NO. 3:01CR252(JBA) |
| ALFRED LENOCI, SR. | NOVEMBER 18, 2005 |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF RESENTENCING

Defendant, Alfred Lenoci, Sr., is before the Court on a limited remand from the United States Court of Appeals for the Second Circuit under United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) for purposes of this Court's determination of whether it will resentence him under the sentencing regime established by the United States Supreme Court in United States v. Booker, and United States v. Fanfan, --- U.S. ---, 125 S.Ct. 738 (2005) ("Booker/Fanfan"). Booker/Fanfan was decided while defendant's sentence was pending on appeal. In compliance with the Second Circuit's February 4, 2005 order, Mr. Lenoci is seeking resentencing. In connection with its determination of whether Mr. Lenoci will be resentenced, the Court has requested memoranda of law. Defendant respectfully

urges that resentencing is strongly indicated in this case because the Court may impose a materially different sentence for two reasons: (1) The sentencing procedures set forth in the Remedy Opinion of Booker now allow the Court to consider more fully, and weigh more heavily, factors raised by defendant at his original sentencing – factors on which the Court's consideration was constrained by the mandatory nature of the United States Sentencing Guidelines; and (2) More recent information concerning the defendant's extremely poor health has arisen subsequent to his original sentencing. Crosby does not foreclose this Court's consideration of that information. Indeed, Second Circuit jurisprudence cited by Crosby holds that such information may be taken into account at resentencing.

## I.    BACKGROUND

On October 19, 2001, defendant pleaded guilty to a two count Information charging him with Bribery, in violation of 18 U.S.C. §666(a)(2), and Theft of Honest Services Mail Fraud, in violation of 18 U.S.C. § 1341 and § 1346. This Court held sentencing hearings on July 22, 2003 and July 30, 2003. On July 22nd, the Court imposed a sentence of twelve months and one day concurrently on both counts. The Court further imposed two years of supervised release on both counts, with several special conditions including home confinement and community service. On July 30, 2003, the Court also fined defendant $50,000.00. Judgment was entered August 1, 2003.

On August 5, 2003, defendant timely appealed his sentence to the United States Court of Appeals for the Second Circuit, claiming his offenses under, U.S.S.G. §2C1.1 and U.S.S.G. §2C1.7, should have been grouped under U.S.S.G. §3D1.2(d) because they measured harm in nearly identical ways.  On July 28, 2004, the Second Circuit affirmed. United States v. Lenoci, 377 F.3d 246, 252 (2d Cir. 2004).

While defendant's appeal was pending, the United States Supreme Court issued rulings in Booker/Fanfan, which was decided in two parts.  The first part was a "Substantive Opinion," holding that facts (aside from prior convictions) necessary to support a sentencing enhancement, other than those established by a guilty plea or jury verdict, must either be admitted by a defendant, or proved to a jury beyond a reasonable doubt.  See Booker/Fanfan, 125 S.Ct. at 756.  Because the Sentencing Guidelines established a sentencing regime under which district courts were essentially required to find facts when applying sentencing enhancements, and because application of the Sentencing Guidelines was mandatory, the Supreme Court concluded that enforcement of the Sixth Amendment's guarantee of a jury trial was implicated, therefore voiding the mandatory aspect of the sentencing guidelines.  Id. at 750.  The second part of the Booker/Fanfan decision, the Remedy Opinion, addressed the constitutional issue.  Specifically, the Court excised two provisions of the Sentencing Reform Act (authorizing the Sentencing Guidelines), namely,

18 U.S.C. §3553(b)(1) mandating the use of the Sentencing Guidelines, and 18 U.S.C. §3742(e) setting forth standards for review on appeal.

In its Remedy Opinion, the Supreme Court replaced §3742(e) with a reasonableness standard of review for federal sentences. Further, the Remedy Opinion made clear that "[s]ection §3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." Booker/Fanfan, 125 S.Ct. at 766. As the Second Circuit made equally clear, the Sentencing Guidelines have not been entirely abandoned. Rather, they remain one factor for consideration under §3553(a), and will impact the reasonableness standard of review. Crosby, 397 F.3d at 111.

Because of the change in sentencing law caused by Booker/Fanfan, the Second Circuit has ordered limited remands, under Crosby, to sentencing appeals pending before it when Booker/Fanfan was decided. Such cases, including this one, have been remanded for the district court's determination of whether the defendant should be resentenced in light of Booker/Fanfan. As discussed in more detail below, under Crosby the district courts' post-Booker/Fanfan obligations and approach to sentencing have changed significantly.

II.    **ARGUMENT**

A.    **The Court should resentence defendant because its consideration of defendant's health, an important factor raised at his initial sentencing, could materially change the sentence in light of Booker/Fanfan.**

At Mr. Lenoci's initial sentencing hearing on July 22, 2005, defendant presented evidence of his ill health. Specifically, evidence was before the Court that defendant suffered from blindness in one eye, significant myocardial infarct requiring cardiac catheterization, hypertension, high cholesterol, diabetes and atherosclerotic heart disease. (7/22/05 Tr. at 40-41) (Exhibit A). Importantly, at the initial sentencing, the Court was informed that Mr. Lenoci was at risk of developing prostate cancer. He had an elevated PSA (Prostate Specific Antigen) count of 4, which increased just before sentencing to 5 and one-half. At the time, Mr. Lenoci was being evaluated for a diagnosis of prostate cancer.[1] (Exhibit B). In view of defendant's precarious health, in combination with evidence of his many good works for the community, defense counsel sought a further downward departure from defendant's Guidelines range, in addition to the Government's motion under U.S.S.G. §5K1.1.

---

[1] As explained more fully, infra, Mr. Lenoci was later diagnosed with full blown prostate cancer. He was treated earlier this year with a two month regiment of radiation treatment and continued with follow-up consultation, monitoring and further treatment.

At sentencing, the Court referenced his poor health.  It is clear, however, that the

Court did not depart from the sentencing guidelines on that basis, rather relied principally

on the government's motion for downward departure based on cooperation:

> THE COURT:        Mr. Lenoci, will you please come to the lectern.
>
> The Court has considered the lengthy arguments this afternoon with respect to how sentence should be imposed and what factors should be considered.  The Court has granted the government's motion for a downward departure based on his cooperation.  The Court knows his cooperation was with respect to – largely to historical information, largely cumulative, and may have some additional information with respect to a potential tax miscreant.  He did not testify before the grand jury or at trial, although he had agreed to testify about Mr. Schinella and regarding Pinto and Ganim.  He met with the government once.  He cooperated starting in September of '01.
>
> Offsetting his cooperation, that has not been of a magnitude or importance as other defendants appearing before the Court, is the unfortunate reality of Mr. Lenoci's health, which is not good and which, therefore, means that a period of incarceration is more difficult.  He faces a sentence without departure of 24 to 30 months.  His conduct has been that of utilizing a genius for good and for bad.  The testimony and investigation results show that Mr. Lenoci was everywhere and yet nowhere, almost like the Scarlet Pimpernel, you seek him here, you seek him there, you seek him everywhere.  It's been hard to pin down exactly where his generosity has crossed the line, where his genius has been badly used, but it is quite clear both of those things have happened.
>
> It is, therefore, the sentence of the Court, of which part will be imposed today, that you be remanded to the custody of the attorney general for a period of 12 months and one day on Counts One and Two concurrently, and thereafter, you serve the first four months of supervised release in home confinement on electronic monitoring with you paying the cost of electronic monitoring.
>
> [The Court continued the sentence].

(7/22/05 Tr. at 61-62) (Exhibit A).

Under the post-<u>Booker/Fanfan</u> sentencing approach articulated in <u>Crosby</u>, the

history and characteristics of the defendant, a factor under §3553(a), are to be considered

independently of Guidelines considerations. In short, the Guidelines range determination is

not automatically entitled to any greater weight than the other factors provided for

consideration under §3553(a) -- the touchstone of <u>Crosby</u>'s analysis.[2] In short, post-

---

[2] Section 3553(a) provides:

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence
sufficient, but not greater than necessary, to comply with the purposes set forth in
paragraph (2) of this subsection. The court, in determining the particular sentence to be
imposed, shall consider--
(1) the nature and circumstances of the offense and the history and characteristics of the
defendant;
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide
just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care,
or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant
as set forth in the guidelines--
(I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United
States Code, subject to any amendments made to such guidelines by act of Congress

Booker/Fanfan sentencing allows the Court to put greater emphasis, if it chooses to do so,

on Mr. Lenoci's history and characteristics, particularly his health.

Crosby directs that while the Guidelines are one consideration for the sentencing

court, the other factors of 18 U.S.C. §3553(a) must be similarly weighed. Indeed, the

Second Circuit concluded that post-Booker/Fanfan sentencing involves new significance for

§3553(a):

---

(regardless of whether such amendments have yet to be incorporated by the Sentencing
Commission into amendments issued under section 994(p) of title 28; and
(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is
sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or
policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of
title 28, United States Code, taking into account any amendments made to such guidelines
or policy statements by act of Congress (regardless of whether such amendments have yet
to be incorporated by the Sentencing Commission into amendments issued under section
994(p) of title 28;
(5) any pertinent policy statement--
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United
States Code, subject to any amendments made to such policy statement by act of
Congress (regardless of whether such amendments have yet to be incorporated by the
Sentencing Commission into amendments issued under section 994(p) of title 28; and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is
sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

> Prior to <u>Booker/Fanfan</u>, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance.

<u>Crosby</u>, 397 F.3d at 111. Thus, absent the mandatory nature of the Guidelines, they become simply another factor to consider, along with the other factors listed in §3553(a). Although the Guidelines are now one factor among others for sentencing consideration, the <u>Crosby</u> court made it clear they have not been abandoned -- that sentencing courts are under a duty to consider them – in conjunction with other factors. <u>Id.</u> In the new sentencing landscape, the district court normally will have to determine the applicable Guidelines range, in the same manner as before <u>Booker/Fanfan</u>. <u>Id.</u> at 111-112. "Once an applicable Guidelines range has been determined, the sentencing judge will have the duty imposed by subsection 3553(a)(4) to 'consider' it, along with all the factors listed in section 3553(a)." <u>Id.</u> at 112. Given these considerations, the Second Circuit summarized:

> [t]hus, at this point, we can identify several essential aspects of <u>Booker/Fanfan</u> that concern the selection of sentences. First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all

> the other factors set forth in section 3552(a), whether (I) to impose the
> sentence that would have been imposed under the Guidelines, i.e., a
> sentence within the applicable Guidelines range or within permissible
> departure authority, or (ii) [sic] to impose a non-Guidelines sentence. Fifth,
> the sentencing judge is entitled to find all the facts appropriate for determining
> either a Guidelines sentence or a non-Guidelines sentence.

Id. at 113.

Although Crosby is very clear that the Guidelines must be considered along with the

other sentencing factors provided in §3553(a), the court declined to give direction as to the

weight appropriately given to the Guideline range as compared with the other §3553(a)

factors.  Rather, the Second Circuit specifically left that decision to the wisdom of the

district courts in discharging their statutory duties:

> We need not on this appeal endeavor to determine what degree of
> consideration is required, or, to put it another way, what weight the
> sentencing judge should normally give to the applicable Guidelines range. We
> think it more consonant with the day-to-day role of district judges in imposing
> sentences and the episodic role of appellate judges in reviewing sentences,
> especially under the now applicable standard of "reasonableness," to permit
> the concept of "consideration" in the context of the applicable Guidelines
> range to evolve as district judges faithfully perform their statutory duties.

Id. at 223.  District courts in this Circuit have concluded that the Guidelines are not entitled

to any greater weight than other §3553(a) factors.  In Simon v. United States, 361

F.Supp.2d 35 (E.D.N.Y. 2005), Judge Sifton authored a reasoned analysis supporting the

view that the Guidelines are to be accorded the same weight as the other §3553(a) factors,

post-Booker/Fanfan:

> I adopt the view that the Guidelines are advisory and entitled to the same
> weight accorded to each other factor that the Court is instructed to consider
> by §3553(a). I do so for three reasons, which have been elaborated upon in
> the post-Booker opinions of several other district courts. First, §3553(a), the
> statute that this Court is required to apply, does not distinguish between the
> weight to be given to any of the factors listed.
>
> Second, the greater the weight given to the Guidelines, the closer the Court
> draws to committing the act that Booker forbids--a Guideline sentence based
> on facts found by a preponderance of the evidence by a judge. United States
> v. Bihar, 356 F.Supp.2d 589 (E.G. 2005); United States v. Huerta-Rodriguez,
> 355 F.Supp.2d 1019 (D.Neb.2005). Such a regime threatens a de facto
> mandatory sentence.
>
> Third, as discussed in United States v. Regnum, 353 F.Supp.2d 984, the
> Guidelines permit a court to grant a departure based on certain offender-
> specific characteristics only in "exceptional cases," U.S.S.G. §5H1.1. **For
> example, age, educational and vocational skills, mental and emotional
> conditions, physical condition, employment record, and family ties and
> responsibilities are not normally relevant. U.S.S.G. §§5H1.1-6. Yet
> these are the sort of characteristics a court is likely to find relevant
> when determining "the history and characteristics of the defendant" as
> required by §3553(a). Similarly, §3553(a)(2)(C) requires a court to
> consider the need to protect the public from future crimes of the
> defendant. But at least one post-Booker court has noted that the
> Guidelines fail to consider that recidivism drastically declines with the
> defendant's age. See Vellum, 2005 WL 300073, at *3.** Depending on the
> individual case, giving "heavy" weight to the Guidelines may therefore be in
> tension, if not conflict, with §3553(a)'s command to consider a multitude of
> factors.

Id. at 40. (emphasis added). See also United States v. West, 383 F.Supp.2d 517, 524 (S.D.N.Y 2005) (giving Guidelines no greater weight than other §3553(a) factors); United States v. Carmona-Rodriguez, No. 04CR667RWS, 2005 WL 840464 (S.D.N.Y. 2005) (same).

Indeed, Judge Sifton's third concern -- the tension between established Guidelines' limitations on considering a defendant's health and age and other §3553(a) factors– is particularly relevant here. At defendant's first sentencing, the Court's consideration of defendant's poor health was necessarily constrained by the mandatory Guidelines' treatment of defendant's history and characteristics, including health. Under the mandatory Guideline rubric, such a consideration was circumscribed by §5H1.4, providing that physical condition is not ordinarily relevant in determining whether a sentencing departure is warranted. "The standards for a downward departure pursuant to §5H1.4 are strict and generally are met only upon a showing that the Bureau of Prisons cannot accommodate the person's medical condition." Salas-Soto v. United States of America, No. 02Civ. 9306, 2004 WL 63494 (S.D.N.Y. 2004) (citing United States v. Martinez, 207 F.3d 133, 139 (2d Cir. 2000)). See also United States v. Farrar, 211 F.Supp.2d 479, 480 (S.D.N.Y. 2002) ("According to §5H1.4, and the rule in this Circuit, medical conditions are not ordinarily

relevant," absent "extraordinary physical impairment") (citing <u>United States v. Altman</u>, 48

F.3d 96, 104 (2d Cir. 1995)).

Under the post-<u>Booker/Fanfan</u> sentencing scheme, however, the defendant's health

as part of the "history and characteristics of the defendant" is now entitled to equal weight,

not only with other §3553(a) factors such as the need for the sentence imposed and the

types of sentences available, but with a Guidelines calculation that includes a perhaps

greater role for defendant's serious health issues.  Moreover, <u>Crosby</u> makes it clear that the

Court is entitled to hear how defense counsel may have approached Mr. Lenoci's health

considerations differently had the Supreme Court's explanation of sentencing law in

<u>Booker/Fanfan</u> been in place at the original sentencing.  The <u>Crosby</u> court recognized:

> Without knowing whether a sentencing judge would have imposed a
> materially different sentence, under the circumstances existing at the time of
> the original sentence, if the judge had discharged his or her obligations under
> the post-<u>Booker/Fanfan</u> regime and counsel had availed themselves of their
> new opportunities to present relevant considerations, an appellate court will
> normally be unable to assess the significance of any error that might have
> been made.

397 F.3d at 117.  Thus, defendant respectfully submits that resentencing is warranted to

allow the Court a fresh and unconfined opportunity to consider and to weigh the

defendant's health in its sentencing decision, as contemplated by <u>Booker/Fanfan</u> and

<u>Crosby</u>.  The Court's sentencing decision is a critically important one on which the defendant is entitled to as full consideration as possible under the law.

**B.    In resentencing defendant, the Court should consider current information about defendant's very poor health that developed subsequent to his original sentencing.  Such information may cause the Court to impose a materially different sentence.**

At the time of the original sentencing, Mr. Lenoci had an elevated PSA count suggesting the possible onset of prostate cancer.  At that time, however, further testing and monitoring was necessary to determine Mr. Lenoci's status.  Further, he earlier had elevated levels which had been lowered by medication.  Since then, Mr. Lenoci developed full-blown prostate cancer.

Because of his age and otherwise poor health (prior myocardial infarction and a two decade history of insulin requiring diabetes), Mr. Lenoci was a poor candidate for surgery. He received about nine weeks of radiation treatment at St. Vincent's Medical Center earlier this year, and is currently being followed regularly by all his principal physicians. (<u>See</u> letters and progress notes from treating medical professionals) (Exhibit C).  Among other things, they are concerned about possible later complications from the radiation.

Further testing in the last year indicated widespread carotid artery stenosis on the right side. (See Dr. Demartini letter) (Exhibit D). His diabetes condition has recently deteriorated. (Exhibit H). Although throughout the first two or three years of his legal problems defendant managed to stay in somewhat acceptable emotional condition, the onset of the prostate cancer somewhat pushed him over the edge. Added to his anxiety over his legal problems and possible incarceration, he became clinically depressed, marked by insomnia, tearfulness, isolation and anxiety with heart palpitations. After a period of "self medication" through heavy drinking, he sought psychiatric treatment and has been seen regularly by a psychiatrist. (See Dr. Berkowitz letters) (Exhibit E). If resentencing were granted, we would update defendant's present medical information, and possibly offer live testimony or presentation to the Court.

Notwithstanding his still pending legal proceedings, and his health problems, this summer and fall he completed 250 hours of community service for Charles D. Smith, Jr. Foundation in the east end of Bridgeport. (Exhibit F). Further he is the 2005 honoree of the Outstanding Achievement in Raising Dollars Award from the American Diabetes Association of Fairfield County. (Exhibit G). We hope the Court will not misunderstand the following thought. With Booker/Fanfan voiding the mandatory aspect of the Sentencing Guidelines, the Court need not "depart" from the $50,000 guidelines to raise Mr. Lenoci's

fine (which was paid earlier notwithstanding the then pendency of his appeal) or, as was

done in the case of Alfred, Jr. -- to use a significant portion of any increase in the form of

charitable contributions.

In light of 18 U.S.C. §3553(a)'s direction to consider defendant's characteristics, and

absent the severe constraints of the Guidelines concerning a defendant's health, this

information certainly could result in a sentence materially different from that imposed by the

Court in 2003.

Crosby specifically expressed no view on what current circumstances a district court

may consider on resentencing:

> If, based solely on the circumstances that existed at the time of the original
> sentence, the sentencing judge decides to resentence, the
> judge will have to consider the issue of what current circumstances are to be
> considered, an issue on which we express no views at this time. See United
> States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002); Werber v. United States,
> 149 F.3d 172 (2d Cir. 1998).

397 F.3d at 118 n. 19. The Crosby court's reference to Quintieri and Werber, however, is

telling. Although these cases were decided under the Guidelines, they hold that a

defendant must always be sentenced as he stands before the court on the day of

sentencing. In Quintieri, the Second Circuit noted that "[f]urthermore and importantly, even

when a remand is limited, an issue may be raised if it arises as a result of events that occur

- 16 -

after the original sentence." 306 F.3d at 1230. Indeed, the hypothetical raised by the

Quintieri court has bearing on his case, that is, consideration of events occurring

subsequent to an original sentencing that greatly affect the defendant:

> If, for example, a woman whose spouse cared for their young children is
> convicted of a crime, she might see little point in seeking a downward
> departure pursuant to § 5K2.0 of the Guidelines on the basis of extraordinary
> family circumstances. If, between her first and second sentencing, her spouse
> were to die unexpectedly, however, we do not doubt that she could raise the
> issue of extraordinary family circumstances in a second sentencing following
> remand even though the remand was "limited" to a different issue. See
> Bryson, 229 F.3d at 426 (stating that extraordinary rehabilitation between the
> first and second sentencing cannot be ruled out as a possible ground for a
> downward departure during the second). This to some extent reflects the
> general admonition that "a court's duty is always to sentence the defendant
> as he stands before the court on the day of sentencing." Id. (citation omitted).

Id. Similarly, in Werber the Second Circuit held that a district court must resentence a

defendant "in light of the circumstances as they stood at the time of his resentencing." 149

F.3d at 178 (citing United States v. Core, 125 F.3d 74, 77 (2d Cir. 1997) ("When the trial

court undertook to resentence [the defendant] ... it was required to consider him as he

stood before the court at that time."); United States v. Jones, 114 F.3d 896, 897 (9th Cir.

1997) (holding that post-sentencing events must be considered in imposing a fine on

resentencing following the grant of a §2255 motion)).

As argued above, resentencing is necessary in this case because the sentence imposed by the Court might be materially different under the post-Booker/Fanfan sentencing rubric.  Moreover, on resentencing defendant Lenoci, the Court should look at the circumstances occurring since his original sentencing, and should sentence defendant as he stands before the Court at this time.  Mr. Lenoci has suffered material, deleterious changes in health since his original sentencing.  Applying the factors of §3553(a), the Court may take this new information into account and impose a lesser sentence than it believed originally warranted.

In United States v. Murray, No. 02 CR 1214(HB), 2005 WL 1200185 (S.D.N.Y. 2005), the Second Circuit issued a limited remand to the district court for purposes of whether defendant should be resentenced, that is, a "Crosby remand."  In concluding that resentencing was warranted, the district court noted that it may consider events and information occurring after the original sentencing, particularly where the later events are related to information that the court had at the original sentencing.  Judge Baer reasoned:

> While it is clear that the Court must make its decision whether to re-sentence based on what transpired before the sentencing, the Crosby decision expressly declines to provide guidance as to whether the Court can consider post-sentencing events and actions in its determination of what any new sentence should be. "If based solely on the circumstances that existed at the time of the original sentence, the sentencing judge decides to re-sentence, the judge will have to consider the issue of what current circumstances are to be considered, an issue on which we express no views at this time." United

> States v. Crosby, 397 F.3d 103, 118 n. 19 (2d Cir. Feb. 2, 2005). But both
> Booker and Crosby are clear that the sentencing judge may find facts to
> determine an appropriate sentence. [Footnote omitted]. Crosby, 397 F.3d at
> 113; Booker, 125 S.Ct. at 747. My interpretation of this language leads to the
> conclusion that the Court has the authority to consider what happened both
> before and after the original sentence to determine the appropriate sentence
> now.
>
>     *      *      *
>
> Consideration of what events transpired as well as Murray's conduct after
> sentencing is important because Murray's truthful information about his co-
> conspirators given before sentencing is inextricably bound up in what he
> contributed after sentence.

Id. at *4. Murray is particularly relevant here. The Court had information regarding Mr.

Lenoci's health at the original sentencing. Evidence regarding the current state of

defendant's health – far worse than at his original sentencing – is inextricably bound up

with earlier health evidence, in much the same way as the cooperation was in Murray.

Crosby does not prohibit the Court from considering evidence of events occurring

subsequent to a remanded defendant's original sentencing. Indeed, Crosby refers to cases

where the Circuit advised that defendants should be resentenced as they stand before the

court. Because defendant's current health is much more precarious, and because it is

inextricably intertwined with the health evidence offered at his original sentencing, the Court

- 19 -

should consider the newly available information when resentencing Mr. Lenoci.  Such

information may cause the Court to impose a materially different sentence.


THE DEFENDANT,
ALFRED LENOCI, SR.


By_____
Ira B. Grudberg (ct00178)
JACOBS, GRUDBERG, BELT & DOW, P.C.
350 Orange Street
New Haven, Connecticut  06511
Telephone No.  (203) 772-3100
Fax No. (203) 772-1691
igrudberg@jacobslaw.com

CERTIFICATION

I hereby certify that a copy of the Defendant's Memorandum in Support of Resentencing has been mailed, postage pre-paid, this 18th day of November, 2005 to:

Office of the United States Attorney
157 Church Street
23rd Floor
New Haven, CT 06510

Warren Maxwell
United States Probation Officer
157 Church Street
New Haven, CT 06510

_____
Ira B. Grudberg

- 21 -