UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.  01-cr-252 (JBA) |
| | : | |
| v. | : | |
| | : | |
| ALFRED LENOCI, SR. | : | November 21, 2005 |

**GOVERNMENT'S MEMORANDUM ON *CROSBY* REMAND**

The Government respectfully submits this memorandum in response to the issuance of the mandate from the United States Court of Appeals for the Second Circuit remanding this case for further proceedings pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).

**I.      Procedural History**

On October 19, 2001, the defendant pleaded guilty to one count of bribery in violation of 18 U.S.C. § 666, and one count of theft of honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346.  At sentencing, on July 22, 2003, the Court concluded that the defendant's adjusted offense level was 17 after applying a three-level reduction for acceptance of responsibility.  Under the applicable Sentencing Guidelines, this offense level combined with a criminal history category of I to mandate a sentencing range of 24-30 months for the defendant.  The defendant was not subject to this range, however, because the Court granted the Government's motion for a downward departure under U.S.S.G. § 5K1.1 based on the defendant's cooperation with the Government's investigation into public corruption in Bridgeport.  Thus, the Court exercised its discretion to impose concurrent sentences of 12 months and 1 day of imprisonment for Counts One and Two, to be followed by a two-year term of

supervised release. The Court continued the sentencing hearing until July 30, 2003, at which time the Court ordered the defendant to pay a fine in the amount of $50,000.

On August 5, 2003, the defendant filed a timely notice of appeal to challenge the Court's decision not to "group" the two counts of conviction for purposes of calculating his offense level under the Sentencing Guidelines. On July 28, 2004, the Court of Appeals affirmed the judgment of this Court, holding that while the grouping issues presented by the case were difficult, they need not be resolved because any error in the failure to group the defendant's two counts of conviction was harmless. *United States v. Lenoci*, 377 F.3d 246, 251-59 (2d Cir.), *cert. denied*, 125 S. Ct. 635 (2004). In other words, even if the Court "should have grouped the two counts in this case, Lenoci's offense level would have been the same." *Id.* at 256. The Court of Appeals withheld its mandate, however, in light of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). On March 7, 2005, the Court of Appeals issued its mandate, remanding the case to this Court for further proceedings in conformity with its opinion in *Crosby*.

II.     **Legal Standard on *Crosby* Remand**

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely*. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory

maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at 765-66.

In *Crosby*, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to *Booker* "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Crosby*, 397 F.3d at 117. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-*Booker/Fanfan* regime and counsel had availed themselves of their new opportunities to present relevant considerations." *Id.* (emphasis added).

**III.    Argument: This Court should not re-sentence in this case.**

    **A.    During the original sentencing, this Court exercised its full discretion and sentenced the defendant to a reasonable and just sentence.**

Under the law as announced in *Booker* and *Crosby*, the defendant received a just and reasonable sentence as a proper exercise of this Court's discretion. The defendant's Guidelines range -- reflecting the characteristics of his offenses and his lack of a criminal history -- mandated a sentence between 24 and 30 months. This Court was not bound by this range, however, because it granted the Government's motion for a downward departure under U.S.S.G. § 5K1.1 to account for the defendant's substantial assistance with the Government's investigation of public corruption in Bridgeport. By granting this motion, this Court had full

discretion to sentence the defendant to an appropriate, just, and reasonable sentence. In other words, although *Booker* and *Crosby* allow district courts to exercise greater discretion in sentencing than they could in the pre-*Booker* regime of mandatory sentencing guidelines, *see United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005), the Court in this case was already free to exercise that same discretion by virtue of the § 5K1.1 departure. *See* U.S.S.G. § 5K1.1 (upon motion of the Government, court may depart from the guidelines and the appropriate reduction "shall be determined by the court for reasons stated that may include, *but are not limited to,* consideration of" various issues related to the defendant's assistance to the Government) (emphasis added).

  The sentence imposed in this case, as an exercise of the Court's discretion, was just and reasonable. The Court sentenced the defendant to 12 months and 1day of imprisonment, a nearly *fifty percent* departure from the low end of the defendant's Guidelines range. As the Court announced at the time, this sentence reflected, among other factors, the Court's assessment of the defendant's cooperation with and assistance to the Government, the defendant's poor health, and the defendant's conduct in the community, both good and bad. *See* July 22, 2003 Sentencing Transcript ("Tr.") at 60-62. In light of these factors, the defendant's criminal conduct, and the defendant's significant role in the Bridgeport public corruption scandal that betrayed the public's trust and caused an erosion in the electorate's confidence in the decency and propriety of its local government, the Court's original sentence was more than reasonable. *See, e.g.*, 18 U.S.C. § 3553(a)(1) (in sentencing, court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); *id.* § 3553(a)(2)(A) (court must consider need for sentence to "reflect the seriousness of the offense, to promote respect for the law, and to

4

provide just punishment for the offense"); *id.* § 3553(a)(2)(B) (court must consider need for sentence "to afford adequate deterrence to criminal conduct").

  **B.** **The only factor identified by the defendant to support his argument for re-sentencing -- his recent health problems -- is irrelevant to the inquiry before the Court and, in any event, the Court already considered his poor health in imposing its sentence.**

  The defendant suggests that re-sentencing is warranted to allow the Court to consider the defendant's recent health problems. To the extent the defendant's health problems relate to issues that have arisen since his original sentencing in July 2003, they are irrelevant to the inquiry before the Court. In any event, the Court already considered the defendant's poor health when it imposed the original sentence.

  The Court of Appeals has repeatedly emphasized that on a *Crosby* remand, when a District Court considers whether resentencing would be appropriate, it must consider only those facts existing at the time of the original sentencing. In *Crosby* itself, the Court of Appeals explained that upon remand, the District Court must decide whether it would have imposed a materially different sentence "under the circumstances existing at the time of the original sentence." *Crosby*, 397 F.3d at 117; *see also id.* at 120 (remanding case to District Court so that district judge "may consider, *based on the circumstances at the time of the original sentence*, *whether* to resentence, after considering the currently applicable statutory requirements as explicated in *Booker/Fanfan* and this opinion") (emphasis partially added). Similarly, in *United States v. Williams*, 399 F.3d 450, 458 n.8 (2d Cir. 2005), the Court of Appeals described the *Crosby* remand procedure as one allowing the "district court . . . to receive and evaluate submissions from the parties of circumstances, *existing at the time of the original sentencing*,

that might have materially altered the original sentence had the Guidelines been only advisory." (emphasis added). And in *United States v. Garcia*, 413 F.3d 201, 229 (2d Cir. 2005), the Court of Appeals again emphasized that a *Crosby* remand is not, in effect, a re-sentencing, but is rather an inquiry into whether the District Court would have imposed a materially different sentence in light of the newly announced *Booker* sentencing regime. This inquiry, according to the Court of Appeals, "must be made by reference to the facts 'existing at the time of the original sentencing,' [*Williams*, 399 F.3d at 459 n.8]; we do not expect district courts to consider new evidence arising after that time, as would be the case if a *Crosby* remand were a resentencing." *Id. See also United States v. Lavarco*, No. 02 CR 1606 HB, 2005 WL 3030843 (S.D.N.Y. Nov. 10, 2005) (rejecting argument for re-sentencing based on defendant's rehabilitation during incarceration by noting that "this is not a factor to be taken into consideration for purposes of a determination as to whether to re-sentence" because "[t]he decision whether to re-sentence a defendant must be based 'solely on the circumstances that existed at the time of the original sentence'") (quoting *Crosby*, 397 F.3d at 117 n.19). In sum, the unambiguous directive from the Court of Appeals requires this Court to decide whether re-sentencing is appropriate based solely on the facts about the defendant's health that existed at the time of the original sentencing in July 2003.

In any event, the Government notes that while the defendant's health may have deteriorated since July 2003, even at that time, the defendant's health was sufficiently poor that this Court considered the issue when it imposed its original sentence. The Pre-Sentence Report described several of the defendant's health problems, *see* ¶¶ 103-105, and counsel for the defendant emphasized the defendant's poor health in his arguments at sentencing, *see*, *e.g.*, Tr. at 40. Most significantly, when this Court announced the reasons for its sentencing decision, it

expressly relied on the defendant's poor health to support its sentence below the guidelines range. *See* Tr. at 61 ("Offsetting his cooperation, that has not been of a magnitude or importance as other defendants appearing before the Court, is the unfortunate reality of Mr. Lenoci's health, which is not good and which, therefore, means that a period of incarceration is more difficult."). Thus, while the defendant contends that his poor health supports re-sentencing in this case, the Court's original sentence already took this factor into account.

## IV.     Conclusion

For the foregoing reasons, in conformity with the procedures outlined in *Crosby*, this Court should indicate, for the record, that after consideration of the defendant's Guidelines range and all of the factors listed in 18 U.S.C. § 3553(a), the defendant should not be re-sentenced.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


SANDRA S. GLOVER
ASSISTANT U.S. ATTORNEY
Federal Bar No. ct24354
157 Church Street, 23rd Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5378
Sandra.Glover@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 21st day of November, 2005, a true and correct copy of the foregoing Memorandum was served by first-class mail, postage pre-paid, upon defense counsel:

Ira B. Grudberg, Esq.
Jacobs, Grudberg, Belt, Dow & Katz, P.C.
350 Orange Street
New Haven, CT 06511

                                                                              _____
                                                                              Sandra S. Glover
                                                                              Assistant U.S. Attorney