```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 3:01cr252 (JBA)** |
| | : | |
| **ALFRED LENOCI, SR.** | : | |

**RULING ON DEFENDANT'S REQUEST FOR RESENTENCING [DOC. # 41]**

This case is now before the Court on the Second Circuit's order remanding for further proceedings in conformity with United States v. Crosby, 397 F.3d 103 (2d Cir. 2005) [Doc. # 39], and defendant's request for resentencing [Doc. # 41].  Defendant was sentenced to one year and one day in prison, two years of supervised release, including four months of home confinement, and a $50,000 fine, after pleading guilty to an Information charging him with the crimes of Bribery, in violation of 18 U.S.C. § 666(a)(2), and Theft of Honest Services Mail Fraud, in violation of 18 U.S.C. §§ 1341 and 1346.  See Judgment [Doc. # 28].  For the reasons that follow, defendant's request for resentencing is denied because the Court concludes it would not have imposed a different sentence if it had sentenced Lenoci in light of the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005).  See Crosby, 397 F.3d at 118 (holding that resentencing is not required if court concludes "the sentence would have been essentially the same as originally imposed.").

1

**I.    Crosby Standard**

Lenoci did not challenge the application of the Sentencing Guidelines to his case under the Sixth Amendment at his sentencing hearing, and therefore, as the parties agree, this remand is governed by Crosby.  As interpreted in Crosby, the Booker decision rendered the Sentencing Guidelines advisory, to be considered by the sentencing court along with the other factors in 18 U.S.C. § 3553(a)[1] in arriving at an appropriate sentence.  Crosby, 397 F.3d at 111-12.  The Court of Appeals declined to define "what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range," preferring "to permit the concept of 'consideration' ... to evolve as district judges faithfully perform their statutory duties."  Id. at 113.

---

[1]"...The court, in determining the particular sentence to be imposed, shall consider--
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
    (A) to reflect the seriousness of the offense, to promote respect for
    the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational
    training, medical care, or other correctional treatment in the most
    effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable
    category of defendant as set forth in the guidelines ...
(5) any pertinent policy statement--
    (A) issued by the Sentencing Commission ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense."
18 U.S.C. § 3553(a)

As most recently explained by the Court of Appeals, "[c]onsideration of the § 3553(a) factors is not a cut-and-dried process of factfinding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." United States v. Fernandez, 443 F.3d 19, 29 (2d Cir. 2006). Thus under the new sentencing regime the proper procedure is for the sentencing court first to calculate the applicable Guidelines sentence, including any departures warranted by the Guidelines, and then decide, based on all the factors in § 3553(a), whether to sentence within the Guidelines range or impose a non-Guidelines sentence. Id. at 111-13. This standard now governs sentences imposed post-Crosby.

For those cases pending on direct appeal before Booker, the Second Circuit held that the appropriate disposition would "be a remand to the district court, not for the purpose of a required resentencing but only for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Id. at 117 (emphasis in original). The sentencing court is to base its decision concerning whether to resentence "on the circumstances at the time of the original sentence...." Id. at 120.

**II. Lenoci's Offense and Sentence**

Lenoci was president of United Properties, Inc., a

Connecticut corporation engaged in commercial real estate development, and was also a partner in Crescent Avenue Development LLC, a development and management company. Beginning in about 1999, defendant and his son, Al Lenoci Jr., and their companies, engaged in activities designed to improperly influence then-mayor of Bridgeport, Joseph Ganim, to award them government grants and contracts. Lenoci gave gifts and money to Paul J. Pinto, an associate of Joseph Ganim, with the understanding that Pinto would pass them to Ganim. Specifically, defendant corruptly paid approximately $10,000 to three subcontractors to construct a residence for Ganim, and also offered to pay Pinto, for Ganim's benefit, one dollar for every square foot of commercial real estate built by defendant.

The details of the bribery scheme were summarized by the Second Circuit's opinion on appeal, with facts derived from defendant's presentence report:

> ... Lenoci, along with his son and brother, sought to become the preferred real estate developer for certain tracts of land in Bridgeport, Connecticut. One of these was a seventeen-acre parcel of land at the former site of the Father Panik Village low-income housing project. ... Lenoci agreed to pay for a variety of construction projects for the mayor's personal residence. In exchange, Ganim used his official position to advance Lenoci's efforts to develop the land; in particular, Ganim wrote a letter in August 1999 to the Bridgeport Housing Authority to support Lenoci's request to enter into a long term lease for the site.
>
> Similarly, in late 1999, Lenoci sought to develop a fifty-acre parcel of land on the Bridgeport waterfront

4

> known as Steel Point. To secure the rights for development, Lenoci agreed to pay the mayor's intermediary [Pinto] $1 for every square foot of commercial space in Bridgeport developed in the future by Lenoci's company, including any development at the Steel Point site. At a later meeting, Lenoci also agreed to raise funds for the mayor's anticipated campaign for governor, in return for Ganim's support for the venture at Steel Point.
>
> With respect to the Father Panik Village site, Lenoci also sought state development funds to subsidize the proposed facility. From June 1999 to October 2000, Lenoci provided Mark Trinkley, a senior development manager at the State of Connecticut's Department of Economic and Community Development, with approximately $35,000 worth of landscaping services, home improvements, and other personal benefits. These expenditures were made in exchange for Trinkley's recommendation that $6.5 million in state development funds be directed to Lenoci's company.

United States v. Lenoci, 377 F.3d 246, 248 (2d Cir. 2004).

At sentencing, the Court granted the Government's motion for a downward departure pursuant to United States Sentencing Guidelines § 5K1.1 [Doc. # 21], based on defendant's substantial assistance in the investigation and prosecution of other individuals. Without the downward departure, defendant's Guidelines range would have been 24-30 months of incarceration, but the Court exercised its discretion to sentence Lenoci to approximately half of that, one year and one day in prison on each count, to run concurrently. See Lenoci, 377 F.3d at 250.

**III. Discussion**

Lenoci's sole argument in favor of resentencing is that he is in poor health, and if the Court were to resentence him, it

would be free to consider his poor health in determining a new sentence. Defendant's argument, however, puts the cart before the horse. While the Court agrees that it would be free to consider an updated medical report or arguments of counsel concerning the weight to be given to defendant's condition <u>if</u> the Court decided to resentence,[2] the decision <u>whether</u> to resentence must be made based "on the circumstances at the time of the original sentence...." <u>Crosby</u>, 397 F.3d at 120; <u>see also</u> <u>id.</u> at 118, n. 19 ("If, <u>based solely on the circumstances that existed at the time of the original sentence</u>, the sentencing judge decides to resentence, the judge will have to consider the issue of what current circumstances are to be considered....") (emphasis supplied). Defendant's arguments concerning his current medical condition assume that the Court will resentence him, but as the Second Circuit has explained, a <u>Crosby</u> remand is not a remand for re-sentencing. <u>See</u> <u>United States v. Garcia</u>, 413 F.3d 201, 226 (2d Cir. 2005). Rather, the purpose of the remand is to answer "a single question: whether the challenged sentence is materially different from the one that the district court

---

[2] <u>See</u> <u>United States v. Quintieri</u>, 306 F.3d 1217, 1230 (2d Cir. 2002) (holding that when Court of Appeals remands a case to the District Court <u>for resentencing</u>, "even when a remand is limited, an issue may be raised if it arises as a result of events that occur after the original sentence" because of "the general admonition that a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing.") (internal citation and quotation omitted, emphasis supplied).

6

would have imposed with a correct understanding of federal sentencing law as now explained by the Supreme Court." Id. at 224; see also United States v. Reifler, __F.3d__, 2006 WL 999937, at *74 (2d Cir. Apr. 18, 2006) (Issue on Crosby remand is "whether [the defendant] would have received [a] custodial or supervisory sentenc[e] that [is] nontrivially different from ... that ... imposed if the Guidelines had been advisory.") The Court therefore does not at this stage consider the deterioration in Lenoci's health subsequent to the original sentencing, but considers only the evidence and arguments presented at the time the original sentence was imposed.

At Lenoci's sentencing, concerns regarding his health were fully aired and, in fact, the Court took health into consideration in the sentence imposed after downward departure.[3] Once the Government made and the Court granted the § 5K1.1 motion, the Court was not bound by the applicable Guidelines range of 24 to 30 months. Therefore defendant's argument that the Court should resentence without being "constrained by the mandatory nature of the ... Guidelines," Def. Mem. in Support of Resentencing [Doc. # 41] at 2, is misplaced, because after the § 5K1.1 motion the Court was not constrained by any mandatory

---

[3]The Court stated: "Offsetting his cooperation, that has not been of a magnitude or importance as other defendants appearing before the Court, is the unfortunate reality of Mr. Lenoci's health, which is not good and which, therefore, means that a period of incarceration is more difficult." Sent. Tr. at 61.

Guidelines range.

After reviewing the substantial medical documentation submitted by defendant concerning his hypertension, diabetes, cardiac disease, and potential prostate cancer, and after lengthy arguments by counsel, the Court sentenced Lenoci to one year and one day in prison. Lenoci's medical situation was considered in choosing the sentence imposed. Based on "the circumstances that existed at the time of the original sentence," <u>Crosby</u>, 397 F.3d at 118 n. 19, the Court would not impose a different sentence on Lenoci if it were to resentence him today.

**IV.  Conclusion**

For the foregoing reasons, defendant's request for resentencing [Doc. # 41] is DENIED. The defendant is ordered to voluntarily surrender by noon on **Wednesday June 14, 2006,** to the United States Marshal or to the facility designated by the Bureau of Prisons.

        IT IS SO ORDERED.

        /s/
        _____
        JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 4th day of May, 2006.**